Arguing on behalf of the defendant's appellant, attorney Mr. J.X. Stone. Arguing on behalf of the defendant's appellant, attorney Mr. Catherine Pellis. Mr. Stone. Good morning. May it please the court, my name is J.X. Stone on behalf of Carly Rousso, the appellant. There are really two issues before the court. One having to do with the construction of the statute under which this Rousso is convicted. And the other having to do with the inappropriateness of a sentence and the judge failing to find extraordinary circumstances in a case where the circumstances are remarkably extraordinary. Let's deal with the first issue first because I think it is more complex and in some ways more interesting. Ms. Rousso is found guilty of an aggravated DUI following a bench trial because of her ingestion of a compound known as DFE. DFE is not a listed compound in the Use of Intoxicating Compounds Act. It is not a compound that is prohibited by the legislature. So the prosecution at the trial of Ms. Rousso relied upon the phrase or any other substance at the end of the act as a catch-all. And why couldn't the prosecution rely on that? Well, they could, they were just wrong. The reason that they're wrong is that the rules of statutory construction prohibit the catch-all to include DFE. We discussed in our opening and our reply brief the statutory construction rule of justice generis. Under that principle, the listed substances must all be similar to the named substance. These substances are all different. There are two groups of substances. Well, you're talking about the chemical makeup of the substances. I am. But there's no dispute that DFE produces a state of intoxication, can render a person unconscious, affect their muscular reaction, etc. So there's no dispute that it's similar in methane, but you're maintaining that the compound is different, correct? Yes, of course. I mean, it's without question that it's a bad idea to huff DFE and then drive a car. The question is whether or not, as the statute is written, is it illegal in the state of Illinois? Well, don't we look at the legislative intent to prevent intoxicated persons from being on the highway? Of course we look to legislative intent, but we also look to the construction of the statute. Other states have faced this same problem. And the result in at least Arizona and New York and Hawaii and other states is to specifically include DFE in that first group of voles or organic liquid substances. DFE is clearly not an alkaloid. And the second problem with the statutory construction issue is that under the last antecedent rule, the readers of the statute must go back to look at the last group in the statute. The last group in the statute are all alkaloids, and DFE cannot be or any other alkaloid because it is not an alkaloid. Didn't the state produce exhibits from the expert who, in her letter, I don't have her name in front of me, but... Bash. Ms. Bash. That they are chemically similar? No. I think what she said was that there was a substance that was chemically similar to... A named substance. DFE, a named substance. Right. But not in the second group and not each of the substances named in the first group. The justus generum rule, well regarded and historically placed in Illinois law, reminds us that all the named substances must be related. And this statute is just poorly written. Aren't they all related, though? Aren't they all intoxicating compounds? They all intoxicate. But they are not all related in the sense that some are bulls, some are alkaloids, some exist in nature, some can only be produced in a laboratory. My question, I guess, is getting to, are we getting down to really minute differences here? You know, the Supreme Court of Hawaii looked at weapons and looked at billies, dirt daggers, firearms. It said these are all weapons. Some stab, some bludgeon, some shoot projectiles. But they all do harm. Aren't these all intoxicating compounds? DFE included. They are all intoxicating compounds. They are not all the same. And because the legislature could have, in fact I would argue should have, included DFE in the list, as other states have since noting the error, Illinois statute is flawed. Well, why then can't we rely on, I thought count one, one count of aggravated driving under the influence of DFE and causing the death? Because the, you're talking about an A3 issue. The statute says, A3 says, uses the phrase, a term of legislative art, intoxicating compounds. If you look at 625, 511, 501.1A, it talks about intoxicating compounds listed in the Use of Intoxicating Compounds Act. That is to say, if you read the statute in Parag Materia, you read all of the statute, and it refers us specifically to the intoxicating, Use of Intoxicating Compounds Act. Right, but under other, well, although it's charged as under the influence of DFE, why couldn't it just say under the influence of an intoxicating drug? And DFE, we agree, is an intoxicating drug. Well, first of all, it didn't say that. It's, it charged. But it could have, I think, because we don't have, there are cases that indicate we don't have to name the drug that is causing the intoxication. I agree with that. Okay. But in this case, they named DFE. And DFE can't be said to be included in the Use of Intoxicating Compounds Act because it's specifically excluded from, it's not named. They list a series of rules in the first part of that act. DFE is not there. Then they list a series of alkaloids. DFE is not an alkaloid. And then they say or any other intoxicating substance. The phrase or any other intoxicating substance under the last antecedent rule must relate back to the alkaloids section of that paragraph. If it does, DFE is not an intoxicating compound under that act. It's simply a question of whether or not ordinary people have advanced knowledge that DFE is prohibited. And I don't think it helps us to say, well, we all know that it's an intoxicant. I think that this statute is flawed. I think that this court should tell the legislature in its opinion that the statute is flawed and call for a reform of the legislation. You know, I know you said we should read the statute in period material. I understand that. But A3 and A6 are two totally different subsections. A6 specifically refers to having any amount of these substances in the bloodstream. And it specifically says an intoxicating compound listed in the Intoxicating Compounds Act. A3 just says driving under the influence of any intoxicating compound. Why wouldn't this, I mean, Bash or the toxicologist said this was an intoxicating compound. Why doesn't that fit the bill? Why do we have to read the act into A3 when A3 doesn't mention the act? Because in every other time when the legislature uses the phrase of our intoxicating compound, they refer to the use of the Intoxicating Compound Act. You would have to say that in this one time in the statute when they use the term of our intoxicating compound that they didn't mean to refer. Isn't that a rule of statutory construction, though, that if they listed it all these other times and then they choose not to list it in A3, that that, in fact, is the legislative intent? And that is, you know, a rule of statutory construction. If it's listed somewhere and not listed somewhere else, the legislature intended not to list it. I understand and appreciate the argument. I believe that this statute is flawed and it doesn't leave the prosecution without a remedy. Ms. Russo has pled guilty to a reckless homicide and is sentenced to five years in prison. She's doing her time. You could reverse the conviction for aggravated DUI under this statutory construction argument. Still, Ms. Russo would receive a substantial penalty and direct the legislature to clear what I think is a flaw in the statute. On this second issue... You can't direct the General Assembly. Why you can't direct? The General Assembly has had numerous opportunities to correct legislation in response to opinions not just from this court but the Supreme Court and have failed to do so. My father used to tell me when I was a boy, Justice Brickett, that you can never make anybody do anything they don't want to do. All you can ever do is make them wish they had. You have the opportunity to tell the legislature that, to make the legislature wish they had. I hope you take that opportunity. I know you wanted to move on to your third point, but let me ask one other question, or your second point, rather. Of course. Let me ask one other question. Maybe the catch-all isn't the phrase in the Intoxicating Compound Act, but the catch-all is A3, to catch those compounds that are not otherwise listed. Isn't that a reasonable idea? I don't think it's the way the statute is written. Okay. It's a reasonable idea, but I don't think that's what the statute says. With the court's permission, the trial judge had some interesting things to say about why he was sentencing Ms. Russo the way he did. He said, I think remarkably, she's alive and the victim is dead. Well, of course, that is topological. It's true in every case that the defendant is alive. If he or she weren't, he or she couldn't be prosecuted. And in every reckless homicide, the victim is dead. So it cannot be, and the law says that it must not be, an aggravating factor that death ensued in a case. Couldn't that statement, I'm going back to reasonable interpretation, couldn't that statement simply be a summary, although a very short summary, of the circumstance that occurred? She's alive. It is a summary of the circumstances that occurred. And taken only that way, not as an enhancer. Well, I think that in the context in which the trial judge made that comment, he was pronouncing sentence. He was explaining his reason for imposing a prison sentence and not considering extraordinary circumstances. And in that context, he said, there's tons of litigation, but I can say one thing. The defendant is still alive and the victim has not is not here today. And it's due to the defendant's actions that the victim, Jacqueline, is not with us today. I think that's a dangerous position for a trial judge to take. You look at that in reference to the sentence as well, though, don't you? You look at the entire proceeding, not just isolated statements. Of course. You look at the entire proceeding, including the sentence that is imposed. Your client was facing three to 14 and she was sentenced to five years. She was sentenced to four years on the aggravated DUI and five years on the reckless homicide. A fact that by itself is curious. Concurrent. Concurrent. That's curious because five is the maximum for the reckless homicide and four is near the minimum for the aggravated DUI. It's curious that someone, a trial judge, a sentencing judge, would sentence someone to the maximum for one offense and near the minimum for another. I see that my time is up. Finish your thought. It seems to me that that demonstrates that this sentence was not well thought out and should be reversed. Didn't the trial court shed a little bit of light on this comment about the victim's deceased and the defendant's alive later at the hour 729 where the trial judge said that she, being your client, should consider herself lucky because for some reason she crashed into the wall. She could have been killed herself and that's why I'm saying she's still alive and kind of clarify that comment a little bit. I don't think that clarified the comment at all. I think it's topological. Of course she's alive. If she weren't, she couldn't be here. And we're grateful that she's alive. It's tragic that Jacqueline is dead, but her death is not and cannot be used as aggravation and cannot be used to oversight the extraordinary circumstances that were Carly's life. You know them. They're cataloged in the brief. No one disputes how tragic her life was before and how remarkable her life became after. Thank you for your opportunity to be heard. We'll have an opportunity for rebuttal. Thank you. Miss Coles. Good morning, Your Honors. Catherine Coles on behalf of the People Council. The People request that this court affirm the defendant's convictions and sentences. The defendant's appeal fails for two reasons. First, the statute that the defendant was convicted under for aggravated DUI included a catch-all phrase which included DFV. And how did it do that if you look at statutory construction issues? Because we have VOLS, we have alkaloids, and then we have in other substances. What does other substances rely on? When looking at the statute, the statute includes 18 different substances. It includes 15 vols and it also includes three alkaloids. And the statute does not specifically break them into two different sections as the defendant characterizes. It's a list of each substance. And all of these substances have one thing in common. They're intoxicating compounds. And that is exactly what DFV is. And that's been admitted. Why wasn't it named? If it is that obvious, why isn't it named? When the legislators contemplated the statute, they included this catch-all phrase because they knew they weren't going to be able to name every single drug that a defendant uses to get high. They knew that there were going to be new ways for defendants to become high. And that's why they included the catch-all phrase. And even though DFV has not been named, and maybe it should have been, it's included because of the catch-all phrase. DFV is admitted by the defendant. It was used to get high. The expert testified on pages 394 to 450 of the record that DFV is a substance that can be used to get high. She produced an exhibit that explained the effects of DFV on rats and showed that it causes an intoxicating effect. The 17-year-old witness testified that the defendant was in an intoxicated state. There's no question of what DFV did. And so when we look at the statute, we look at what all those chemicals have in common, and they all are intoxicating compounds. Even if we dive deeper into each of these chemicals, which we don't have to, DFV was similar to the chemicals. DFV was similar to TCE. There was an exhibit, People's Exhibit 40. It presented the breakdown of DFV and TCE. It presented the breakdown and showed the overlap between the composition of the two chemicals. There were similar elements in each chemical. So... TCE is not an alkaloid, correct? No, it is not. Isn't there a break in the statute where the legislature put in there a long list of these vials, but didn't say vials in front of that, but a long list of things that turned out to be vials? And then there's a break that says, and the alkaloids, and that lists three specific alkaloids. So why wouldn't the, as counsel argues, any other substance simply refer to any other alkaloid substance? Because all of these substances, the vials and the alkaloids, they're not so dissimilar. They all are used for the purpose, or can be used for the purpose, of causing an intoxicating effect. Is tobacco then under this? Pardon? Is tobacco a compound? Tobacco is not in this, but tobacco is not something that's used as an intoxicating substance. It's not used as something to get high. It's not used in the same way you would use DFV. Well, toluene and a lot of these other things are used in, you know, airplane glue is toluene. That's not used to get high. It's used to build airplane models, but people use it to get high. Correct. If you smoke, if you're 13 years old and you smoke a bunch of cigarettes and get behind the wheel, you might crash your car. So is that an intoxicating compound? Is there any other substance under this? The Hawaii case dealt with this issue of nicotine or other drugs, and they concluded that it is not something that is an intoxicating compound because it's not something that is used to get high in the common understanding of what intoxication is. And the trial court found the defendant guilty of the basically four counts of aggravated DUI and then said that they all merged. The order identifies two of them. His oral pronouncements talk about the death of Jacqueline, so we believe or we should take from the record that he was talking about that. Which charge did the trial judge sentence her on? Under the influence of DFE or A3 or A6, I guess would be easier to say, because that's not really clear from this record. Your Honor, I would have to delve deeper into the record to determine that. I am not positive, but I do know she was convicted under three counts of A6 and then one count of A3, and then looking to A3 as discussed in counsel's argument, A3 does not specify, refer to the Intoxicating Compounds Act, and A3 simply says intoxicating compound and doesn't define it. And so when you look at the common... And counsel's point is it does, although it may not have had to, does say DFE, under the influence of DFE, and he says that draws it back in. But would it be easier generally to understand this if we knew exactly which count she was sentenced on? Perhaps, but I do not believe it matters since there was no... Since she's been sentenced on aggravated DUI, and she could have been sentenced on any of these accounts, and they could have merged in any manner. Additionally, when we look back to the A6 statute, and we look at the arguments and cases that defendant cited to, including Hugh, to support the position that there are two categories here, and therefore this rule, this catch-all cannot apply. Hugh is a completely different case. Hugh was a case of a will where there were two specific documents listed, and there were not a list of documents. It was just two specific documents, and there was no catch-all phrase. So that doesn't really help here. And when we look at all of the out-of-case, out-of-jurisdiction cases that counsel cites to, none of them are dealing with a catch-all phrase. They are dealing with statutes that specifically just don't include DFE, but don't have a catch-all phrase. And when we look at the record, and talking about the Wisconsin case, which is unpublished, and the Wisconsin law does not allow for the reliance on unpublished cases, nor does Illinois. But the Wisconsin case, which didn't include DFE, the legislator is now changing it to include a catch-all phrase similar to Illinois'. Would an indictment under A3 have been sufficient if it just said, under the influence of an intoxicating compound, would that have provided sufficient notice to the defendant to prepare for trial? Absolutely. And I think that the indictment as charged provided sufficient notice for the defendant to prepare. Because DFE was in her system as a result of both her admissions as well as the cans found in the car and the urinalysis, correct? Correct. And looking at the statute as a whole, and looking at what the purpose of the statute is to prevent people from driving under the influence of drugs or alcohol, that's exactly what the defendant did. And she knew what she did. She had used DFE before. She knew it caused her an intoxicating effect. And that's why this court should affirm her convictions under either A6 or A3. Would you agree with, to shift to the other argument, that the trial court, in sentencing the defendant, did recognize that there were quote-unquote tons of mitigation? The trial court looked at both the mitigating and aggravating factors. But the court did recognize that there were tons of mitigation. The court recognized there was mitigating factors, absolutely. Tons. He said, didn't he use the term tons of mitigation? If that's what he said, I'm sure, yeah. What then would be an extraordinary circumstance to justify probation if? An extraordinary circumstance might occur had the defendant, after the commission of this crime, maybe remained sober. Had she remained sober. She did not remain sober throughout the sense of the commission of the crime. She actually used inhalants again twice, and she also drank after the commission of this crime. And the mitigating circumstances present in this case are far from extraordinary. Unfortunately, horrible things happen to lots of people, including defendants. But what she did is she put her needs above the needs of others. She put her need to get high above the needs of others, knowing the effect of this high, knowing she had passed out before using DFE, she got behind the wheel. And in doing so, she totally disregarded the lives of others, and as a result, has permanently changed Jacqueline's mother's life, Jacqueline's father's life, and Jacqueline's brother's lives. Did the trial court improperly rely on the death of the victim in aggravation? The trial court did not improperly rely on looking at the death of Jacqueline as an aggravating factor. The trial court did not do that. The trial court merely was summarizing, one, the events that occurred, and two, was mentioning that, yes, the defendant is lucky to be alive. She could have killed herself. She ran into this wall. And the defendant, but he was not using the death as an aggravating factor, especially when you look at the totality of the sentencing hearing. Well, he did send sort of the maximum on reckless homicide. He did, but that was appropriate in this case. And reckless homicide is served at 50%, whereas aggravated DUI is served at 85%. And when we look at the four-year sentence and the five-year sentence, these are appropriate in this case when we look at the egregious conduct of the defendant and the fact that the defendant had all opportunities in the world to become sober. She had the support of her family. She had a privileged upbringing. She was raised in a wealthy neighborhood. I'm just saying, though, that we have a trial court who says, I recognize that in this case, this particular case, there is tons of mitigation. We have a situation where the trial court comments in some fashion on the death of the victim and then sentences the defendant where there's tons of mitigation to the maximum sentence. So how can we be sure that the trial court did not rely on an improper aggravating factor? When we look at the totality of the sentencing hearing, we see, yes, he recognized there was mitigation, but he also recognized there was aggravation. There were the two statements read by Jacqueline's father and mother. Jacqueline's father and mother's lives were changed forever. Jacqueline's mother saw her daughter die right in front of her. So it's your position that that was just merely reference to the victim impact testimony, which the court has an obligation to consider? Yes. Yes, Your Honor. There are two specific extraordinary circumstances cases that I looked at. One involved a CNA and some children, and the other a truck driver. Both of them were granted the extraordinary circumstance exception. Primarily, it appears, on the basis that they were very involved in their religious upbringing and they were very committed to religion to help them get through whatever issue was facing them. There was a pastor who testified here and other people related to that particular church, I believe. Why shouldn't that be considered, especially in light of the other extraordinary circumstance case? And I apologize for not remembering the names. One's out of Kane County and one's out of the 4th District. Well, when looking at the totality of the defendant's life and the totality of the circumstances here, these circumstances weren't extraordinary. The defendant began using drugs and alcohol prior to the traumatic events. She began using them when she was 12 years old. She did not, and she continued to use them. And her family supported her and tried to get her to stop using drugs by sending her to a rehab, a very expensive rehab in Utah for 17 months. The fact that a lot of money has been spent is not the issue here. The fact is she had opportunities and she wasn't able to maybe avail herself of all of the benefits of those opportunities at that time. But isn't it a fact that she has, before this trial and before this sentencing, didn't she avail herself of many of the things that she had learned to the point where there was one witness who testified who said that her counseling, her presence, her help had saved, this parent was sure that she had saved this other young person's life. Isn't that extraordinary? No, I do not believe that is extraordinary. Additionally, I think it's important to note that the defendant abused drugs, inhalants specifically, at least two times after this crime occurred. And so for her to go in and lecture people while she's still using drugs, I think that's important to note, especially since her crime is dangerous and presents a danger to society. That could be said of every addict. There, that suffer from addiction. And many of whom do not take steps to get better. And when they try, they fall down again. But if this court states there's extraordinary circumstances for her and sentences her for probation, that would detract from the seriousness of this offense as well. And that would detract from the impact she's had on these four other people's lives for the rest of their lives, including the brothers who witnessed this offense and who are now afraid to walk on sidewalks, to go outside. You can sum up. The people would ask this court to affirm both the defendant's convictions and the sentences, especially in light of the seriousness of the offense. Thank you, Your Honors. Thank you. Mr. Stone. Thank you. When the trial judge said that Ms. Russo was alive and that Jackie was, Jacqueline was dead, I noted that. I included it in a post-sentencing motion. And I did that for a reason. I wanted the judge to explain so that this court wouldn't have to guess what he meant when he apparently used the death of the victim as an aggravating factor. Unfortunately, though my language was quite clear in the post-trial motion, the judge did not respond. And so we're left to speculate as to whether the clear language was as I believe it was, an aggravating factor improperly placed in the case, or some other reason. I don't think we should guess an opinion in this court. Would you agree that the trial court has an obligation to consider victim impact statements? Of course it does. And in the victim impact statements, the victim's surviving family members were talking about the devastating effect of the loss of Jacqueline on their lives, correct? Yes. I know that exists in every murder case, in every death case. And sadly, a trial judge, without even referencing the victim's death, looks like he's callous when he sentences a defendant. I respectfully disagree. I think that the trial court could have referred to the victim impact by talking about the effect of Ms. Russo's conduct on the family. As opposed to saying you're alive. As opposed to saying you're alive and she's dead. I think that's at a minimum inartful and at best an aggravating factor that should not be, cannot be, placed at worst. And I don't think that we should guess. So I put it in a motion and we got no clearer response. Speaking of a lack of a clear response, I agree with the court that it would have been clearer in the record, it could have been clearer in the record, as to which theory or count Ms. Russo was being sentenced on. And perhaps a solution to my problem is to remand this matter back to the trial court to make that question clearer. The final thing I want to say... Let me ask... I'm sorry. Let me ask one other question. I have presided over and I have read many a record that starts with, we are here today because there has been a death of a vibrant, young, and then describing the person, giving a summary. What's the problem with that, as Justice Burkett said? You're recognizing the problem that brings you all together. As you stated it, there is no problem. As the trial judge in this case stated it, there's a huge problem. He sets up a balance. You're alive, she's dead, and I'm going to take away all of the extraordinary mitigation, even though there's tons of it, and sentence you to the maximum on the reckless homicide and say that there are no extraordinary circumstances on the aggravated DUI. Because she's dead and you're alive. He doesn't end up with that. That last part I think you added. That's my reading. Those are not his words. But I think it's fairly clear. The other and final thing I'd like to say this morning to the court is that in 40 years of defending persons charged with crime, I don't know of another person who had a mitigation parent saying, your conduct saved my son's life. Her participation, Carly's participation in treatment, in group sessions, has had a profound impact on many, many people. You have letters in the record. The judge received those letters. You would agree that we owe the judge's sentencing decision great deference. Of course you do. Would you also agree that there was an aggravation in this case? There was no aggravation evidence presented. Well, in the PSI, though. The court was made aware of incidents after this where apparently she used the substance. It would be disingenuous to say that there isn't a competing aggravation. And we have a situation where a young child is killed in front of the parents and in front of siblings, and the mother's also injured in the incident. Unthinkably. Sad. So, I'm just saying, the tons of mitigation, the trial court is obligated to balance that with what aggravation is present, correct? Had he engaged in a thoughtful balancing position, I wouldn't take the position I'm taking today. What he said is in the record. I think it was wrong. Thank you for the opportunity to be heard this morning. Thank you, counsel, for argument. We will adjourn at this time, take the matter under advisement, and render a decision in due course. Thank you.